(63 App. Div. 523.)

FIDELITY TRUST & GUARANTY CO. OF BUFFALO et al. v. BELL et al.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. CHATTEL MORTGAGES—FRAUDULENT CONVEYANCES.

A chattel mortgage given to plaintiff to secure certain debts, largely in excess of the value of the property mortgaged, included a debt owing to defendant, and recited that, under certain specified circumstances, plaintiff might take possession of and sell the property, and that, after payment of the indebtedness named and expenses, the surplus, if any, should be paid to the mortgagor. Held, that the provision as to payment of any

surplus did not render the mortgage fraudulent as to defendant, since his indebtedness would have been paid before any surplus could arise.

2. SAME—SETTING ASIDE.

Where a mortgage of partnership property secures all of the partnership creditors, such mortgage will not be set aside at the instance of such creditors on the ground that it was made in fraud of individual creditors of the co-partners.

Appeal from trial term, Erie county.

Action by the Fidelity Trust & Guaranty Company of Buffalo and others against Virginia V. Bell, and others, executors of Frederick A. Bell, deceased. From a judgment in favor of plaintiffs, defendants appeal. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Henry H. Seymour, for appellants.
John G. Milburn, for respondents.

WILLIAMS, J. The judgment appealed from should be affirmed, with costs. The action was brought to establish the validity of a chattel mortgage given by the defendants Sheldon to the plaintiff trust company, and to determine the rights and interests of the parties to and in the property covered by the mortgage, and to procure such property to be sold, and the proceeds thereof to be distributed under the direction of the court. The Sheldons were hotel keepers, and gave the mortgage in question, covering all the personal property in their hotel, together with the lease of the hotel, to the trust company, in trust, to secure payment of their co-partnership debts. The amount of the debts secured was $50,000, which was largely in excess of the value of the property mortgaged. The mortgage provided that it should be void if the Sheldons paid the debts, which they agreed to pay as they should become due and payable, and if default should be made in such payment, or if the trust company should deem itself or said beneficiaries unsafe before the maturity of their indebtedness, that the trust company might take possession of and sell the property mortgaged, and apply the proceeds towards the payment of the expenses of the sale and all charges touching the same, and the indebtedness secured, in the order therein specified, and pay the surplus, if any, to the said Sheldons, their executors, administrators, or assigns. The mortgage was dated April 25, 1898, and was acknowledged and delivered April 28, 1898, on which latter day it was filed in the office of the clerk of Erie county. The indebtedness secured was all actually owing and unpaid, and included about $28,500 owing to Frederick A. Bell, or upon which he was liable. It also included installments of rent under the lease, to come due on the 1st days of May, June, and July, 1898, of $1,464.96 each, which the court found were secured for the purpose of keeping the mortgaged property so that it might be disposed of under the conditions most favorable to said mortgage as a security; and the court also found that the mortgage was given with the sole intent and purpose of securing payment of the indebtedness therein specified, and not with intent to hinder,

delay, or defraud the creditors of the firm, or of the parties as individuals. After the execution, delivery, and filing of the trust company mortgage, and on the 6th day of May, 1898, the Sheldons gave another chattel mortgage, covering the same personal property, to the said Bell, to secure payment of the same indebtedness of $28,500 secured in the trust company mortgage, for his benefit; and Bell, when he took his mortgage, had knowledge of the trust company mortgage, and of the provision therein for his benefit. This mortgage was filed in the clerk's office of Erie county the day it was given, and Bell immediately on the filing of the mortgage took possession of the property covered thereby, and advertised it for sale on the 28th day of May, 1898. Thereupon this action was commenced, and an injunction obtained restraining the sale, and asking for the appointment of a temporary receiver; and on the 27th of May, 1898, a temporary receiver was appointed, and he was directed by order of the court to expose the property, including the leasehold interest, for sale at auction to the highest bidder, and, in case the defendant Bell should purchase at the sale, to receive in place of cash the bond of Bell, with sureties, conditioned that he should pay into court the purchase price, or any part of it, when and as directed by the court. June 16, 1898, the property was sold and bid in by Bell for $31,001, of which $1 was for the lease. The bond was given, and Bell took the property. The amount due and owing on the trust company mortgage exceeded the proceeds of the sale of the property. Bell has since died, and the defendants are his executors. The court decided that the trust company mortgage was valid, and that the trust company was entitled to the proceeds of the sale of the property, to be distributed pursuant to the terms of its mortgage.

It is claimed that the provision in the mortgage that the surplus, if any, should be paid over to the Sheldons, the mortgagors, rendered the mortgage fraudulent in law and void. This is the usual form in which chattel mortgages are drawn. If there had been no such clause in the mortgage, the surplus would have belonged to the mortgagors. The clause, therefore, expressed only the legal obligation resting upon the mortgagee to pay it over to them. The provision was no interference with the right of any creditor by appropriate proceedings to reach such surplus if any should arise. It was held in Delaney v. Valentine, 154 N. Y. 692, 49 N. E. 65, that such a clause did not invalidate the mortgage, whether the same was given to secure the mortgagee alone, or to secure other creditors as well as the mortgagee. That case seems to dispose of this claim adversely to the appellant. It may also be said that the property mortgaged was clearly insufficient to pay all the debts secured, so that there could be no surplus anyway. But, if there should be a surplus, Bell would in no way be interested in what became of it, because his whole indebtedness would have been paid before such surplus arose. He could not, therefore, be defrauded by the clause in the mortgage providing for the payment of the surplus to the mortgagors.

It is also claimed that the finding by the court that the mortgage was not given with intent to hinder, delay, and defraud their credit-

ors was against the weight of the evidence, and should not be sustained. We do not think, after examining the record, that we would be justified in interfering with the decision of the trial court upon this question. The same may be said as to the finding by the court of the purpose of securing the rent for two or three months after the giving of the mortgage. Its purpose was found to be honest, and we should not interfere with that finding. More than this, the property mortgaged was all partnership property, and, so far as appears, all the partnership creditors were named in and secured by the mortgage. There were, it is true, other creditors, but they were individual creditors; and a transfer by a co-partnership cannot be set aside at the instance of co-partnership creditors on the ground that it was made in fraud of the individual creditors of the co-partners. Wheel Co. v. Fielding, 101 N. Y. 510, 5 N. E. 431; Crook v. Rindskopf, 105 N. Y. 487, 488, 12 N. E. 174; Haynes v. Brooks, 116 N. Y. 487, 22 N. E. 1083. The court very properly held, in view of the authorities, that there was nothing amounting to a general assignment made. It was largely a question of fact,—of intention,—and was correctly disposed of by the trial court. Tompkins v. Hunter, 149 N. Y. 117, 43 N. E. 532; Dodge v. McKechnie, 156 N. Y. 514, 51 N. E. 268; Delaney v. Valentine, 154 N. Y. 692, 49 N. E. 65.

We conclude that the judgment appealed from should be affirmed, with costs. All concur.